IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-560-GMS |
| v. | ) | |
| | ) | Crim. Action No. 06-81-GMS |
| ROBERT HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S ANSWERING BRIEF
IN OPPOSITION TO DEFENDANT'S
MOTION UNDER 28 U.S.C. § 2255**

COLM F. CONNOLLY
United States Attorney

EDMOND FALGOWSKI
Assistant United States Attorney
United States Attorney's Office
Nemours Building, Suite 700
1007 Orange Street
Wilmington, Delaware 19801

Dated: December 14, 2007

## STATEMENT OF THE CASE AND FACTS

On August 1, 2006, Robert J. Harris, Jr., the petitioner, was indicted in a three-count Indictment charging the following: possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

On February 28, 2007, Harris entered a guilty plea to Count 1 of the Indictment, possession of a firearm by a felon. Pursuant to the plea agreement, the Government agreed to dismiss the remaining counts of the Indictment. As a further condition of the plea agreement the Attorney General's Office for the State of Delaware agreed to dismiss two indictments in Superior Court for Kent County, Delaware, which indictments charged conduct unrelated to the Federal Indictment. From guilty plea through sentencing, Harris was represented by Kevin P. O'Neill, Esq.

### The Revised Presentence Report

Prior to sentencing a Revised Presentence Report was prepared. The offense conduct, to which Harris made no objection before or at sentencing, is set forth in paragraphs 5 through 7, as follows:

> 5. A DEA search warrant was issued on April 26, 2006. It reflected the culmination of an 11-month investigation into the drug organization of one [W.B.], which investigation encompassed confidential informants, police surveillance, and a wire tape order. The affidavit named various suspected members of [W.B.'s] drug organization. The affidavit was presented in support of search warrants for six different apartments/residences in the Dover area.
>
> 6. One of the six locations was the apartment of [W.B.'s] sister.... When the search warrant was executed at her apartment, on April 27, 2006, at approximately 6 a.m., [W.B.] was not present. However, [W.B.'s] sister was in her bedroom with the defendant. During the search of that bedroom, investigators found 3.5 grams of crack cocaine in a pocket of the defendant's

1

pants and a handgun in a clothes hamper. The defendant admitted to police that both the crack cocaine and the handgun were his. Also found in the bedroom was $8,803 cash.

     7.     In a video taped, post-arrest statement the defendant admitted the following: He had been buying cocaine from [W.B.] on an inconsistent basis for two to three years. When asked for an average, the defendant said once a month for "36 months." The defendant explained that sometimes he would get cocaine from [W.B.] every two or three weeks and on other occasions nothing would happen for three or four months. The defendant explained that [W.B.] traveled weekly to New York to purchase cocaine and that he, the defendant, would try to "catch-up" to [W.B.] before his trips. The defendant said he would give cash to [W.B.] "Whatever I had at the time." The defendant said usually it was $11,000 or $12,000 for which the defendant would receive one-half a kilo of cocaine. Sometimes the defendant would give to [W.B.] $19,000 or $23,000. The last time he had bought drugs from [W.B.] was in March 2006.

In paragraph 16 of the Revised Presentence Report, a four-point increase in the offense level was assessed, under U.S.S.G. Section 2K2.1(b)(6)[1], for the use of a firearm in connection with another felony offense, as follows:

     16.     **Specific Offense Characteristic:** Section 2K2.1(b)(6) calls for a four level increase, if the defendant used or possessed any firearm or ammunition in connection with another felony offense. On the date of the defendant's arrest, investigators found 3.5 grams of crack cocaine in his pants pockets, a .9 mm handgun in a clothes hamper, and $8,803 in cash in the bedroom. In a post arrest statement, the defendant admitted the cocaine and the handgun were his. The crack cocaine found in the defendant's pants pocket was broken into smaller pieces as it is commonly sold upon the street. Additionally, in a post arrest statement, the defendant reported that he had been purchasing cocaine from [W.B.], on an inconsistent basis, for the last two to three years. The defendant stated that he would usually purchase one-half kilogram of cocaine at a time for $11,000 to $12,000. Based on this information, the probation office believes a four level enhancement is appropriate.

---

[1] In this regard, Section 2K2.1(b)(5) of the November 1, 2005, version of the Guidelines should have been cited. The Revised Presentence Report cited to the November 1, 2006, version of the Guidelines, which is incorrect in that the offense of conviction occurred on April 26, 2006. However, there is no resultant prejudice to Harris: the two subsections are identical.

The Guideline range adopted by the Revised Presentence Report was 30-36 months incarceration. An addendum to the Revised Presentence Report advised, "The defendant through his attorney Kevin P. O'Neill has no objections to the presentence report."

**Sentencing**

At the outset of sentencing on June 7, 2007, Kevin P. O'Neill, Esquire, and Harris separately advised the Court that they had no objection to the factual statements made in either the Presentence Report or its revision. Sentencing Transcript [T] 7-8.

As to the four-point increase in the offense level for possession of a firearm in connection with another felony offense, the Court addressed the parties as follows:

> THE COURT: Is there any dispute with the four-point enhancement for the specific offense characteristic that the defendant used or possessed a firearm or ammunition in connection with another felony offense? Mr. O'Neill.
>
> MR. O'NEILL: Yes, we do have an objection to that, and I did notify the Department of Probation of that.
>
> THE COURT: I have no notice of that at all. You notified them in writing?
>
> MR. O'NEILL: I did in writing. I have a long letter I wrote about all this.
>
> THE COURT: Mr. Falgowski.
>
> MR. FALGOWSKI: Yes, Your Honor. [U.S. Probation Officer Durkin] submitted the presentence report to the parties ... a month ago. And in his papers [Mr. O'Neill] submitted ... a handwritten letter from the defendant. . . . It wasn't a pro se submission. It was something that was submitted by the defendant to his attorney and then relayed to Mr. [Durkin].
>
> \* \* \*
>
> [T]he defendant's argument was, I shouldn't get four points because I didn't plead guilty to a drug count. I only pled guilty to a gun count. I didn't plead guilty to possession with intent to distribute. I only pled guilty to a gun count that didn't reference any drugs. When I entered my guilty plea, I didn't say I was guilty of any drugs. So therefore, you can't use that information in writing the presentence report.

3

* * *

    MR. O'NEILL: I think my client has a very good position. He and I have spoken many times about the four-point enhancement, I think Mr. Falgowski has faithfully related the nature of that objection.

T 15-18.

At this point the prosecutor explained that he believed Harris entered sentencing having abandoned this argument after considering the Government's written submission to the probation department in support of the relevant four-point increase in the offense level. T 20.

The District Court then indicated that sentencing would be continued to permit Mr. O'Neill an opportunity to present his argument in writing. T 22. When the Court asked Harris if he was in accord with his counsel, Harris responded:

> THE DEFENDANT: Yes. Your Honor, I would like to say, if my argument - - you already know whether it has merit or not. I am quite sure you already know that.
>
> THE COURT: I already know what?
>
> THE DEFENDANT: If the argument has any merit or if it doesn't. I am not a lawyer, so I don't know the procedures. I know about relevant conduct. I have read about it. But under my plea agreement, I wasn't thinking of relevant conduct.

T 25.

Mr. O'Neill then explained to the Court that he had visited Harris in prison the previous week and discussed with him the subject of relevant conduct regarding the offense (T 25-26), to which the Court responded:

> THE COURT: And you explained to him how it factors into the calculus of the sentence?
>
> MR. O'NEILL: I did, Your Honor.
>
> THE COURT: That is what we are talking about here. That is the government's position. I think that is the correct position of the law that would support the enhancement that we are discussing.

4

    If you are satisfied to proceed today, Mr. Harris, I am prepared to do that.

    THE DEFENDANT:  I mean, I have my family here.

    THE COURT:  It is hanging over you. I understand that.

    THE DEFENDANT:  I just want to get over it, Your Honor.

* * *

    THE COURT:  I am going to resolve the objection.

    MR. O'NEILL:  That's it. That's the only issue. I don't think we are prepared on the defense's point to concede that he should receive a four-point enhancement, because my client feels he didn't plead to that, and he is being sentenced for drug felony conduct and he didn't plead to that. The evidence is not in his view sufficient.

T 26-27.

  The Court then took a short recess after which the Court asked the prosecutor to articulate the Government's position regarding the relevant four-point enhancement. After reiterating that Harris had no objections to the facts as set forth in the Presentence Report, the prosecutor summarized them. Noting that Harris admittedly participated in a 36 month long, continuing conspiracy to purchase on a monthly basis between $12,000 and $23,000 of cocaine from W.B., the last purchase being the previous month, the prosecutor restated that Harris was arrested in his girlfriend's bedroom; that in the bedroom was found $8,803, 3.5 grams of crack cocaine, and a .9mm semi-automatic pistol; that Harris admitted to police the drugs and gun were his; that the crack cocaine was found in Harris' pants, which hung next to the bed from a closet door knob; that the crack cocaine was in two different pieces in two different bags; that a single usage of crack cocaine is approximately .1 grams, thus, the cocaine in Harris' pants constituted 35 separate usages; that there was not found in the bedroom any paraphernalia with which to smoke the crack cocaine, and paragraph 58 of the Revised Presentence Report recounted Harris' statement that he does not use

drugs and never has; and that the semi-automatic pistol was found at the bottom of Harris' bed in a clothes hamper. T 27-30.

Responding to the prosecutor's argument, Mr. O'Neill conceded: "I explained to my client today the circumstantial nature of the relevant conduct, it would appear to be there." T 32. Further, Mr. O'Neill explained, "And I have gone through this with [Harris] again and again." T33.

The Court then ruled that the four-point enhancement was applicable, finding that the circumstances of Harris' possession of crack cocaine demonstrated that he "was involved in drug trafficking." T 32- 34. Harris was sentenced to 36 months incarceration. T 45.

On or about September 17, 2007, the defendant filed a timely motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. In support of his Section 2255 motion, Harris attaches a seven-page memorandum. In spite of the record, Harris alleges that Mr. O'Neill failed to object to the relevant four-point increase, thereby rendering ineffective assistance of counsel.

**ARGUMENT**

Harris contends that Mr. O'Neill rendered ineffective assistance at sentencing.

A claim of ineffective assistance of counsel is cognizable under 28 U.S.C. § 2255. *See United States v. Vancol*, 778 F. Supp. 219, 222 (D. Del. 1991), *aff'd without op.*, 970 F.2d 901 (3d Cir. 1992), *citing* 28 U.S.C. § 2255 and *United States v. Nino*, 878 F.2d 101 (3d Cir. 1989).

When a prisoner files a motion pursuant to 28 U.S.C. § 2255, the District Court is required to hold an evidentiary hearing on the matter unless the "motion and the records of the case conclusively show that the prisoner is entitled to no relief." Bald assertions and conclusory allegations do not provide sufficient ground to require the government to respond to discovery or to warrant an evidentiary hearing. *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987). *See also Vancol*, 778 F. Supp. at 226, *citing*, among other cases, *Mayberry*, and *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir.), *cert. denied*, 112 S. Ct. 280 (1991). The Court's decision regarding a hearing is within the sound discretion of the District Court. *United States v. Nino*, 878 F.2d 101, 103 (3d Cir. 1989), *citing*, *United States v. Williams*, 615 F.2d 585-591 (3d Cir. 1980).

The burden is on the Petitioner to prove ineffective assistance. *See Vancol*, 778 F. Supp. at 226, *citing*, *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Otherwise, the courts would be burdened by meritless petitions. Id. Furthermore, the Supreme Court has ruled:

> [t]here is a strong presumption that counsel's performance falls within the "wide range of professional assistance [;]" the [Petitioner] bears the burden of proving that counsel's representation was unreasonable under the prevailing professional norms and that the challenged action was not sound strategy. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.

7

Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citations omitted).

The test for whether counsel rendered ineffective assistance is whether:

1) counsel's representation was below an objective standard of reasonableness; and

2) counsel's unreasonable level of performance prejudiced the Petitioner.

See Vancol, 778 F. Supp. at 226, citing Strickland v. Washington, 466 U.S. 668, 692 (1984)

The Supreme Court later reaffirmed the holding of *Strickland*, but noted that "an analysis focusing solely on mere outcome determination without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." *Lockhart v. Fretwell*, 113 S. Ct. 838, 842 (1993). The touchstone of an ineffective assistance claim, the court explained is the fairness of the adversary proceeding. *Id.* at 843.

Harris asserts in his motion that Mr. O'Neill failed to object to, and argue against, the relevant four point increase in the offense level. The record demonstrates otherwise. Indeed, Mr. O'Neill did object to the four-level enhancement and articulated Harris' position. Moreover, there is no meritorious argument that defense counsel could have made in opposition to the relevant four point increase.

In his 2255 motion Harris contends that the four point increase can not be assessed because he did not plead guilty to any drug offense. This argument ignores the applicability of the "relevant conduct" provisions of U.S.S.G. Section 1B1.3. Harris neither objected to nor offered to supplement the offense conduct as set forth in the Revised Presentence Report, and those facts satisfy the conditions of Section 2K2.1(b)(5). Further, Application Note 14 of the November 1, 2006, version of the Guidelines defines "in connection with," as that phrase is used in the relevant four-point increase, as having "the potential of facilitating... another felony offense". By way of example,

Application Note 14 indicates the four-point increase applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs.... In these cases, application of [the] subsection[]... is warranted because the presence of the firearm has the potential of facilitating another felony offense." 2K2.1, Commentary, Application Note 14.

In the instant case, Harris' drugs were found next to his bed, his gun was found at the bottom of his bed. Thus, Harris' possession of his handgun was "in connection with" his possession of crack cocaine with intent to distribute.

Also instructive is case law regarding 18 U.S.C. 924©, which criminalizes the possession of a firearm "in furtherance of" a drug trafficking crime. The application of this statute is determined on the following non-exclusive factors:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profit, and the time and circumstances under which the gun is found.

*United States v. Robb*, 471 F. 3d 491, 496 (3d Cir. 2006) (drugs and sawed-off shotgun found in Robb's home satisfied Section 924©).

In the instant case, Harris was involved in lengthy drug trafficking of significant quantities. The firearm was readily assessable to Harris, within seconds he could have retrieved it. The semi-automatic pistol is commonly recognized as the handgun of choice for drug traffickers, and is to be distinguished from a hunting rifle or collection piece. The pistol was stolen, Harris, a convicted felon, was unlawfully in possession of the gun. The record is silent as to whether the gun was loaded.. The pistol was in close proximity to both the crack cocaine and the $8,803 cash. Finally, Harris was present in the bedroom when the police entered it to find the referenced evidence. Thus,

9

the record demonstrates that Harris possessed the .9mm semi-automatic pistol not only "in connection with" a drug trafficking crime, but also "in furtherance of" such a crime. *See United State v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (section 924© satisfied where gun and drugs found in compartment below floor tiles).

The cases cited by Harris do not support his motion. In *United States v. Lloyd*, 361 F.3d 197 (3d Cir. 2004), the Third Circuit affirmed Lloyd's four-point increase in his offense level under 2K2.1(b)(5) where he put a bomb, an illegally possessed destructive devise, under a car. Further, *United States v. Fenton*, 309 F.3d 825 (3d Cir. 2002) and *United States v. Blount*, 337 F.3d 404 (4th Cir. 2003) are inapplicable. They both concern the relevant four-point increase in the offense level, but in fact patterns in which felons were convicted for firearm possession resulting from the theft of those same firearms.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully submits that Harris' ineffective assistance of counsel argument is meritless. Mr. O'Neill's representation neither fell below an objectively reasonable standard nor resulted in prejudice to Harris. He presents no issue of material fact and the record conclusively demonstrates that he is entitled to no relief. The United States requests that without a hearing this Court deny Harris' Section 2255 petition.

                                        Respectfully submitted,

                                        COLM F. CONNOLLY
                                        United States Attorney

                                        By: _____
                                        EDMOND FALGOWSKI
                                        Assistant United States Attorney

DATED:   December 14, 2007

## CERTIFICATE OF SERVICE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Civil Action No. 05-466-SLR |
| ) | Civil Action No. 07-560-GMS |
| v.  ) | |
| ) | Crim. Action No. 06-81-GMS |
| ROBERT HARRIS, ) | |
| ) | |
| Defendant. ) | |

I, Theresa A. Jordan, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on December 14, 2007, I served the foregoing

### GOVERNMENT'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255

by causing two copies of said document to be placed in a postage prepaid envelope, placed in the United States Mail, and addressed to petitioner, pro se, as follows:

Robert J. Harris, Jr.
#05136-015
U.S.P. Canaan
P.O. Box 300
Waymart, PA 18472

*/s/ Theresa A. Jordan*